**Mr. and Mrs. Herman E. MITCHELL, Veronica O. Pierre, and Susan Olivierre, Appellants,**

v.

**Joe LAFLAMME, Paul LaFlamme, Texas Cattlemen'S Trust, Kevin Frawley, and Robert Frawley, Appellees and Cross–Appellants,**

v.

**American Housing Foundation and the Courtyards of Baytown Owners Association, Inc., Appellees and Cross–Appellees.**

No. 14–98–00185–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 12, 2000.

Rod E. Gorman, Mark H. Ritchie, Casey J. Lambright, Houston, for appellants.

Robert L. Templeton, Amarillo, for appellees.

Panel consists of Justices SEARS, CANNON, and LEE.*

## OPINION

ROSS A. SEARS, Justice (Assigned).

In this case, we address two appeals arising from an action against The Courtyards of Baytown Owners Association (the Association). In the first appeal, several townhome owners (the Owners) appeal a denial of attorneys' fees and damages for the common areas and exteriors of their homes. In the second, several former majority townhome owners and board members of the townhome owners' association (the Former Owners) appeal the trial court's order requiring them to indemnify the new majority property owner for judgment against the Association and for costs, expenses, and attorneys' fees.

In the Owners' appeal, we affirm the portions of the trial court's judgment that disallowed the jury's verdict for damages to the common areas and exteriors of the Owners' townhomes. We reverse that portion of the trial court's judgment that denied the Owners attorneys' fees and render judgment that the Owners collect at-torneys' fees in the amount awarded to them by the jury. In the Former Owners' appeal, we find that the trial court erred by permitting a trial amendment after it signed the final judgment. Further, because we find that there were no live pleadings upon which the trial court could enter judgment regarding indemnification, we reverse and render to delete that portion of the judgment awarding indemnification against the Former Owners.

## BACKGROUND

The Owners who brought this suit are Herman and Roseann Mitchell, Veronica O. Pierre (Roseann Mitchell's mother), and Susan Olivierre (Roseann Mitchell's sister). They bought four townhomes in The Courtyards of Baytown in 1991. The Courtyards of Baytown was maintained by the Association, of which all townhome owners were members and to which each owner paid monthly assessments.

The Owners testified that by 1993, the Association stopped caring for the common area of The Courtyards of Baytown. It closed the swimming pool permanently; driveways and roads had large potholes; instead of fixing the paving, the Association filled the holes with shell; wires hung from electrical boxes; the topsoil was never leveled to prevent draining into the townhomes; and it failed to plant grass.

The evidence also showed that the Association had stopped maintaining the exteriors of the townhomes. Even simple things, like cleaning out the gutters, were left undone. The lack of maintenance caused many problems to the Owners' townhomes. For example, their townhomes developed extensive leaking in the roofs and walls, pooling of water around the homes, flooding, and rotting to walls, doors, and window frames. In Mrs.

* Senior Justices Ross A. Sears, Bill Cannon, and Norman Lee sitting by assignment.

Pierre's townhome, kitchen walls rotted to such an extent that she could see outside if she opened a kitchen cabinet door. The flooding and leaking caused damage to the interior walls, ceilings, and floors of the Owners' townhomes. In December 1993, Mrs. Pierre wrote to the Association about the problems, but received no response. In frustration, the Mitchells stopped paying their monthly assessments fees to the Association, although Mrs. Pierre and Ms. Olivierre continued to pay.

At trial, the jury found that the Association failed to comply with its covenants and bylaws. It awarded Mr. and Mrs. Mitchell $11,850, Mrs. Pierre $28,000, and Ms. Olivierre $37,400 for costs of repair to the interior of their townhomes, loss of use, and costs of repairs to the exteriors and common areas. The jury also awarded attorneys' fees to the Owners. However, the trial court entered a judgment notwithstanding the verdict, which disallowed the attorneys' fees and limited the damages to $400 for Mr. and Mrs. Mitchell, $9,300 for Mrs. Pierre, and $13,400 for Ms. Olivierre for the costs of repair to the interiors and loss of use only.

## EXTERIORS & COMMON AREAS DAMAGES

In their first point of error, the Owners claim that the trial court erred in granting judgment notwithstanding the verdict on the issue of damages to common areas and the exterior of the Owners' townhomes. The trial court's judgment disallowed these damages because the Owners did not sue in a derivative suit on behalf of the Association.

### A. Standard of Review

A trial court may render a judgment notwithstanding the verdict if a directed verdict would have been proper and may, upon notice and motion, disregard

any jury finding on a question that has no support in the evidence. *See* Tex.R.Civ.P. 301. We will affirm a judgment notwithstanding the verdict if there is no evidence to support an issue, or conversely, the evidence establishes an issue as a matter of law. *See Exxon Corp. v. Quinn*, 726 S.W.2d 17, 19 (Tex.1987). "No evidence" exists, and a judgment notwithstanding the verdict should be entered, when the record discloses one of the following: (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla of evidence; or (4) the evidence establishes conclusively the opposite of a vital fact. *See Juliette Fowler Homes, Inc. v. Welch Assocs., Inc.*, 793 S.W.2d 660, 666 n. 9 (Tex.1990). To determine whether there is any evidence, we must review the record in the light most favorable to the verdict, considering only the evidence and inferences that support the verdict and rejecting the evidence and inferences contrary to the verdict. *See Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex.1990). When there is more than a scintilla of competent evidence to support the jury's findings, the judgment notwithstanding the verdict should be reversed. *See id.* at 228; *Holeman v. Landmark Chevrolet Corp.*, 989 S.W.2d 395, 402 (Tex.App.—Houston [14th Dist.] 1999, pet. denied).

### B. Application

The jury's verdict compensated the Owners for the following three elements of damages: (1) cost of repairs to the interior of their townhomes; (2) loss of use; and (3) costs of repairs to the common areas and exteriors of their townhomes. The trial court's judgment notwithstanding the verdict allows only interior damages and

loss of use. The judgment explains that "[b]ecause the plaintiffs did not sue on behalf of the non-profit corporation, Courtyards of Baytown Owners Association, Inc., the corporation is not entitled to recover damages to the exterior of the units." We thus examine the record in the light most favorable to the verdict to determine whether the Owners could sue individually for exterior and common area damages.

■ The starting point for this review is the declaration of covenants, conditions, and restrictions for The Courtyards of Baytown (the declaration). Restrictions in such a dedicatory instrument are treated as contracts between the parties. *See Herbert v. Polly Ranch Homeowners Ass'n*, 943 S.W.2d 906, 907–08 (Tex.App.—Houston [1st Dist.] 1996, no writ). In this case, the declaration provides that the Association is the owner of the Courtyards' common areas. The declaration further provides that individual townhome owners own the lots and improvements on the lots. Under the declaration, the Association promises to maintain the common areas and the exteriors of each townhome: "Any cooperative action necessary or appropriate to the proper maintenance and upkeep of the Common Area and the exteriors and roofs of the residences ... shall be taken by the Board of Directors [of the Association] or by its duly delegated representatives." Lastly, to enforce these provisions, the declaration provides, "The Association, or any Owner, shall have the right to enforce, by any proceeding at law or in equity, all restrictions, conditions, covenants, liens, and charges now or hereinafter imposed by the provisions of this Declaration."

■ Given these facts, Appellees[1] first argue that because the Association is a non-profit corporation, a suit complaining about its noncompliance with the declaration must be brought under the ultra vires provision of the Texas Non–Profit Corporation Act. *See* Tex.Civ.St. art. 1396—2.03 (Vernon 1997 & Supp.2000). The ultra vires provision states in part that a lawsuit may be asserted "[i]n a proceeding by the corporation, whether acting directly or through a receiver, trustee, or other legal representative, or through members in a representative suit, against the incumbent or former officers or directors of the corporation for exceeding their authority." *Id.* Appellees thus argue that to sue for damages to the common areas and exteriors, the Owners were required to bring a representative suit on behalf of the Association. However, we can find no case law, and Appellees cite none, that the failure to maintain exteriors and common areas constitutes an ultra vires act by a homeowners' association. We thus find this argument unpersuasive.

■ Another of Appellees' arguments is more persuasive, however. They correctly contend that an owner cannot personally recover damages for a wrong done solely to the corporation, even though the owner may be injured by that wrong. *See Wingate v. Hajdik*, 795 S.W.2d 717, 719 (Tex. 1990). Here, the evidence shows that the Association owns the common areas of the Courtyards. Thus, any damages to the common areas were damages suffered by the Association.

■ The Owners nonetheless argue that they also had an individual contract or property right in the common areas for which they could sue for damages. We

---

**1.** The appellees in the Owners' appeal are Texas Cattlemen's Trust, Kevin Frawley, Robert Frawley, Joe LaFlamme, Paul LaFlamme, The Courtyards of Baytown Owners Association, Inc., and American Housing Foundation.

disagree. The declaration does not grant the Owners the right to sue for damages for the common areas, but only the right to sue to enforce the declaration's provisions. Thus, the case law cited by the Owners in which injured shareholders could sue for damages is inapplicable in this situation. *See DeBord v. Circle Y of Yoakum,* 951 S.W.2d 127 (Tex.App.—Corpus Christi 1997) (stockholder in closely held corporation could sue for breach of fiduciary duty owed to him individually), *rev'd on other grounds,* 967 S.W.2d 352 (Tex.1998);[2] *Faour v. Faour,* 789 S.W.2d 620, 622 (Tex.App.—Texarkana 1990, writ denied) (shareholder may sue for violation of his individual rights, but cause of action for injury to the property of the corporation is vested in the corporation).

As to a property right in the common areas, the Owners claim that case law gives them an inherent property interest for which they can sue for damages. *See Inwood N. Homeowners' Ass'n v. Harris,* 736 S.W.2d 632 (Tex.1987). In *Inwood,* the issue was whether homestead laws protect homeowners against foreclosure for their failure to pay assessments to their homeowners' association. On appeal, the Texas Supreme Court held that a homeowners' association's right to collect assessment fees is an inherent property right. *Id.* at 636. *Inwood* does not stand for the proposition that a homeowner has a property interest in the common areas for which it can sue for damages when they are not maintained. We are not persuaded that the Owners had a personal property interest in the common areas for which they could sue for damages.

We thus hold that recovery for damages done the common areas belong solely to the Association, and to sue for those dam-

ages, the Owners were required to bring a representative suit on behalf of the corporation. *See Wingate,* 795 S.W.2d at 719. Accordingly, the trial court did not err in granting judgment notwithstanding the verdict on the issue of damages to the common areas.

■ Whether the Owners can sue for damages to the exteriors of their townhomes, which they own in fee simple and which the Association was bound to maintain, is a more difficult issue, but one we need not reach. In the jury charge, common area and exterior damages were submitted together as one element of damages. However, there is no evidence in the record reflecting that the Owners individually incurred specific damages because of the exteriors of their townhomes. While they argued to the jury that the amount of their exterior damages was a forthcoming $9,000 special assessment, the evidence reflects that American Housing Foundation had already placed this amount in escrow for each Owner. The Owners could pay this special assessment at a rate of one dollar per year or pay it if they sold their homes at a profit. Because there is no evidence that the Owners individually incurred any monetary loss because of the exteriors of their townhomes, the jury's award could have only encompassed common area damages, to which the Owners are not entitled. *See Juliette Fowler Homes,* 793 S.W.2d at 666 n. 9 (no evidence exists when there is a complete absence of evidence of a vital fact or the evidence establishes conclusively the opposite of a vital fact). Consequently, the trial court did not err in granting judgment notwithstanding the verdict on the element of common area and exterior dam-

---

2. The jury in this case found against the Owners on their claim against the Association for breach of fiduciary duty.

ages. We overrule the Owners' point of error one.

## ATTORNEYS' FEES

■■■ In their second point of error, the Owners contend that the trial court erred in disregarding the jury's award of attorneys' fees.[3] They claim that they are entitled to attorneys' fees under section 5.006(a) of the Property Code, which states: "In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim." TEX.PROP.CODE ANN. § 5.006(a) (Vernon 1984). The award of attorneys' fees under this statute is mandatory. See Inwood N. Homeowners' Ass'n v. Meier, 625 S.W.2d 742, 744 (Tex. Civ.App.—Houston [1st Dist.] 1981, no writ).

■■■ Appellees respond that the Owners never raised the applicability of Property Code section 5.006(a) before the trial court, thus waiving the issue for appeal. However, if a party pleads facts which, if true, entitle him to the relief sought, he need not specifically plead the applicable statute in order to recover under it. See Bellefonte Underwriters Ins. Co. v. Brown, 663 S.W.2d 562, 575 (Tex. App.—Houston [14th Dist.] 1983), rev'd in part on other grounds, 704 S.W.2d 742

(Tex.1986); see also O'Connell v. Hitt, 730 S.W.2d 16, 18 (Tex.App.—Corpus Christi 1987, no writ). Further, "pleading an incorrect or inapplicable theory or statute, as was done here, does not preclude an award." Bellefonte, 663 S.W.2d at 575. The Owners' petition includes a detailed recitation of the declaration's restrictions and of Appellees' breach of those restrictions. Although the petition seeks attorneys' fees under the Declaratory Judgment Act or the Uniform Condominium Act, it also includes a general prayer for attorneys' fees. We find that the pleadings suffice to recover attorneys' fees.

We are further persuaded that the Owners should recover their attorneys' fees under section 5.006(a) because it is so similar to the attorneys' fees provision of the Condominium Act, which they pleaded, and because of the theories under which the case was tried and submitted to the jury. First, the Uniform Condominium Act provides attorneys' fees for a prevailing party in a suit to enforce a dedicatory instrument.[4] Thus, the Appellees were on notice that the Owners were seeking attorneys' fees because of the Association's failure to comply with its declaration. Cf. Horizon/CMS Healthcare Corp. v. Auld, 43 Tex.Sup.Ct.J. 1151, 2000 WL 1199263 at *7 (Aug. 24, 2000) (Reference to incorrect version of statute excused; Texas follows a fair notice standard, which looks to wheth-

3. The judgment reads: "The Court disregards the jury's answer to Question 8 as to plaintiff's attorney's fees since no declaratory judgment relief was sought, there was no evidence COURTYARDS OF BAYTOWN was a condominium project as defined by the Texas Condominium Act, and the plaintiffs introduced no evidence as to presentment of claim as to Art. 38.002 of the Tex.Civil Practice and Remedies Code."

4. The Uniform Condominium Act's provision for attorneys' fees is very similar to section 5.006(a) of the Property Code: "[t]he prevail-

ing party in an action to enforce the declaration, bylaws, or rules is entitled to reasonable attorney's fees and costs of litigation from the nonprevailing party." TEX.PROP.CODE ANN. § 82.161(b) (Vernon 1995). The Uniform Condominium Act cannot apply to this case, however, because real property such as the Courtyards of Baytown "is not a condominium if all of the common elements are owned by a legal entity separate from the unit owners, such as a corporation, even if the separate legal entity is owned by the unit owners." Id. § 82.003(a)(8).

er the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant.). Second, the case was tried and submitted to the jury on the theory of breach of covenants, not on declaratory judgment claims. Thus, the attorneys' fees sought were always tied to the breach of covenants, not the Declaratory Judgment Act, under which the Owners had also pleaded.

In conclusion, we do not agree that the Owners waived the applicability of section 5.006(a) of the Property Code. Because award of attorneys' fees to the prevailing party is mandatory under section 5.006, we sustain point of error two and reverse and render that the Owners be awarded $82,000 for preparation and trial, $15,000 for their appeal to this Court, and $10,000 if this case is appealed to the Texas Supreme Court, as originally awarded by the jury in its verdict.

### INDEMNITY

We next address the appeal by Kevin Frawley, Robert Frawley, Joe LaFlamme, Paul LaFlamme, and Texas Cattlemen's Trust, who are all former majority owners of the townhomes in the Courtyards of Baytown (collectively hereinafter called the Former Owners), and several of whom served as officers of the townhome owners' association. In the final judgment, the trial court ordered them to indemnify American Housing Foundation (the new majority owner) and The Courtyards of Baytown Owners' Association pursuant to an indemnification agreement for the judgment, expenses, attorneys' fees, and costs of court associated with the claims brought by Mr. and Mrs. Herman Mitchell, Veronica O. Pierre, or Susan Olivierre. The Former Owners contend the trial court erred in (1) permitting American Housing Foundation to file a trial amendment for

indemnity two months after the final judgment; (2) modifying the final judgment to include an indemnity paragraph when American Housing Foundation did not move for a trial amendment; (3) including an indemnity paragraph in the final judgment when there were no live pleadings for indemnification; and (4) including an indemnity paragraph in the final judgment when no jury issue had been tendered to the court nor submitted to the jury about the existence, validity, terms, or breach of an indemnification agreement. We address points one and three as dispositive of the Former Owners' appeal.

### A. Background

When Herman and Roseann Mitchell, Veronica Pierre, and Susan Olivierre first brought suit, they sued only the Courtyards of Baytown Owners Association. Their legal maneuvers allegedly delayed the sale of townhomes from the Former Owners to the American Housing Foundation. Thus, the Former Owners and the American Housing Foundation intervened in the lawsuit.

While this litigation was pending, American Housing Foundation and the Former Owners purportedly created an indemnification agreement in which the Former Owners agreed to indemnify American Housing Foundation and the Courtyards of Baytown Owners' Association from all claims, judgments, costs, expenses, and attorneys' fees arising from the lawsuit. Further, the Former Owners agreed to assume the defense of the Association. In exchange, the Association assigned the right to prosecute suit, the right to choose counsel, and any right to judgment to the Former Owners. Further, American Housing Foundation agreed to dismiss its petition in intervention and to assist the Former Owners in their prosecution of this suit. American Housing Foundation

signed the indemnification agreement, as did one Former Owner on behalf of three of the four Former Owners who were parties in the lawsuit.

American Housing Foundation did not dismiss its petition in intervention. Instead, it filed a Plea for Indemnification just six days before trial.[5] During a hearing on the morning of trial, the Former Owners objected to the late filing of the Plea for Indemnification. Further, they argued that the conditions precedent to indemnification had not been met. For instance, the indemnification agreement required American Housing to provide documentation and assistance to the Former Owners. The Former Owners argued that despite their prior requests for certain documentation, American Housing did not provide the documentation until the day of trial. The Former Owners argued to the trial court that they and American Housing Foundation had been discussing whether the latter had breached the agreement for three weeks. The day American Housing filed its Plea for Indemnification, the Former Owners sent it a letter announcing it had breached the agreement.

The trial court stated it was confused about what should be done with the indemnity claim, but it ruled that it was disallowing the parties from litigating a breach of the indemnity agreement. It allowed American Housing Foundation's intervention to stand, but did not grant leave to file the Plea for Indemnification at that time. During trial, the trial court admitted a copy of the indemnity agreement in evidence, but did not submit the issue of indemnification to the jury. The jury returned its verdict on July 18, 1997, and the trial court signed the original judgment in this case in September 1997. American Housing Foundation then filed a motion to modify the judgment, seeking to include indemnification language. The trial court granted the motion to modify and signed a corrected final judgment, which included an indemnification paragraph, on October 20, 1997. On December 22, 1997, the trial court granted American Housing Foundation leave to file the plea for indemnification as a trial amendment.

## B. Application

In their first point of error, the Former Owners contend that the trial court erred in permitting American Housing Foundation to file a trial amendment after the final judgment had been signed. We agree. A trial court cannot grant a motion to amend the pleadings after it has rendered judgment. *See Boarder to Boarder Trucking, Inc. v. Mondi, Inc.,* 831 S.W.2d 495, 498–99 (Tex.App.—Corpus Christi 1992, no writ); *see also Automaker, Inc. v. C.C.R.T. Co.,* 976 S.W.2d 744, 746 (Tex.App.—Houston [1st Dist.] 1998, no pet.); *Texas Gen. Indem. Co. v. Ellis,* 888 S.W.2d 830, 831–32 (Tex.App.—Tyler 1994, no writ).[6]

American Housing Foundation argues that many cases permit post-verdict amendment. *See, e.g., Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938 (Tex. 1990); *Candelier v. Ringstaff,* 786 S.W.2d 41 (Tex.App.—Beaumont 1990, writ denied). However, in those cases, the trial

---

**5.** Trial was set for Monday, July 7, 1997. American Housing Foundation filed its Plea for Indemnification on Tuesday, July 1, 1997, just before the holiday weekend.

**6.** American Housing Foundation contends that the Former Owners waived application of *Boarder* because they did not properly object

to the trial court. We disagree. The Former Owners' objection to American Housing Foundation's leave to file a trial amendment stated that a final judgment had already been signed and that American Housing should have obtained leave to file before judgment.

amendment occurred after verdict, but before the trial court signed the final judgment.

■ American Housing Foundation also argues that under Rule 67 of the Texas Rules of Civil Procedure, whether a trial amendment was filed or allowed is of no consequence. Rule 67 provides in part that if "issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." TEX.R.CIV.P. 67. American Housing Foundation claims that the indemnification agreement was clear and unambiguous and, because it was admitted in evidence, it was an issue determined as a matter of law by the trial court. However, even if an issue is tried by consent, a party is obligated to amend its pleadings to support the issue prior to its submission to the jury. *See Ramex Constr. Co. v. Tamcon Serv., Inc.,* No. 14–97–01209–CV, 2000 WL 350547 at *2 (Tex.App.—Houston [14th Dist.] Apr.20, 2000, no pet. h.); *see also Bedgood v. Madalin,* 600 S.W.2d 773, 775–76 (Tex.1980). Thus, we need not address whether the indemnification issue was tried by consent. Even if it was, American Housing Foundation failed to timely amend its pleadings to support the issue.

Accordingly, because the trial court erred in permitting a trial amendment after signing the final judgment, we sustain point of error one.

■ Having determined that it was error to permit a trial amendment about indemnification after the judgment had been signed, we next address the Former Owners' point of error three. They contend in point of error three that the trial court erred in modifying the final judgment to include an indemnity paragraph where there were no live pleadings about indemnification. A judgment cannot stand unless it is supported by pleadings and

evidence. *See Escamilla v. Estate of Escamilla,* 805 S.W.2d 886, 887 (Tex.App.—Corpus Christi 1991, no writ); *see also* TEX.R.CIV.P. 301.

■ American Housing Foundation filed its Plea for Indemnification within seven days of trial, but did so without leave of court as required by Rule 63. *See* TEX.R.CIV.P. 63. "Texas courts have held that in the absence of a sufficient showing of surprise by the opposing party, the failure to obtain leave of court when filing a late pleading may be cured by the trial court's action in considering the amended pleading." *Goswami v. Metropolitan Sav. & Loan Ass'n,* 751 S.W.2d 487, 490 (Tex. 1988). Here, the Former Owners objected to the untimeliness of the Plea for Indemnification and its prejudice to them during the pretrial hearing. A pleading that asserts a new cause of action is prejudicial on its face. *See State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 658 (Tex.1994); *Greenhalgh,* 787 S.W.2d at 939. Because the Plea for Indemnification was a new cause of action, completely unrelated to any other cause already pleaded, it was prejudicial on its face when untimely filed. The failure of American Housing Foundation to obtain leave of court cannot be excused, even if the trial court considered the untimely filed pleading.

Accordingly, there were no live pleadings requesting indemnification, and it was error for the trial court to include indemnification in the judgment. We sustain the Former Owners' point of error two, and we reverse and render to delete that paragraph of the judgment that awarded indemnification to American Housing Foundation.

In conclusion, we have affirmed the portion of the judgment that disallowed damages to Mr. and Mrs. Herman E. Mitchell, Veronica O. Pierre, and Susan Olivierre for

the common areas and exteriors of their townhomes. We reverse the portion of the judgment disallowing attorneys' fees, and we render judgment that Mr. and Mrs. Herman E. Mitchell, Veronica O. Pierre, and Susan Olivierre be awarded $82,000 in attorneys' fees for preparation and trial, $15,000 in attorneys' fees for appeal to this court of appeals, and $10,000 for appeal to the Texas Supreme Court, should this case be further appealed, from The Courtyards of Baytown Owners Association, Inc., as originally awarded by the jury in its verdict. Further, we reverse and render to delete the portion of the judgment that awarded indemnification to American Housing Foundation and The Courtyards of Baytown Owners Association, Inc. from Joe LaFlamme, Paul LaFlamme, Kevin Frawley, Robert Frawley, and Texas Cattlemen's Trust.